**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1180
Fax: 212-465-1181
*Attorneys for Plaintiff, FLSA Collective*
*Plaintiffs, and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

STEPHEN DEL VALLE PEÑA, *on behalf of himself,*
*FLSA Collective Plaintiffs, and the Class,*

|  |  |
|---|---|
| Plaintiff, | Case No.: |
| v. | **CLASS AND COLLECTIVE ACTION COMPLAINT** |
| THE HEADLESS WIDOW LLC, d/b/a HEADLESS WIDOW, and EDIN CANOVIC, | Jury Trial Demanded |
| Defendants. |  |

---

Plaintiff STEPHEN DEL VALLE PEÑA ("Plaintiff PEÑA" or "Plaintiff"), on behalf of himself and others similarly situated, by and through his undersigned attorneys, hereby files this Class and Collective Action Complaint against THE HEADLESS WIDOW LLC d/b/a HEADLESS WIDOW ("Corporate Defendant") and EDIN CANOVIC ("Individual Defendant"), (each individually, "Defendant" or, collectively, "Defendants"), and states as follows:

## INTRODUCTION

1.      Plaintiff alleges, pursuant to the Fair Labor Standards Act as amended, 29 U.S.C. §§201 *et. seq.* ("FLSA"), he and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, including overtime, due to an invalid tip credit; (2) unpaid overtime premiums

due to straight rate; (3) unlawfully retained gratuities due to an invalid tip pooling policy; (4) liquidated damages; and (5) attorney's fees and costs.

2.      Plaintiff further alleges that, pursuant to the New York Labor Law ("NYLL"), he and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, including overtime, due to an invalid tip credit; (2) unpaid overtime premiums due to straight time pay; (3) unpaid spread of hours premium; (4) unlawfully retained gratuities due to an invalid tip pooling policy; (5) statutory penalties; (6) liquidated damages; and (7) attorney's fees and costs.

3.      Plaintiff additionally alleges for damages under the Internal Revenue Code, 26 U.S.C. § 7434 for relief, damages, fees, and costs in this matter because Defendants willfully filed fraudulent tax information forms with the Internal Revenue Service ("IRS").

4.      Plaintiff further alleges, on behalf of himself and others similarly situated, that Defendants breached the contracts that Defendants made with them by failing to pay employer payroll taxes for them, as required by the Federal Insurance Contribution Act ("FICA").

5.      Plaintiff also alleges that, in retaining the above employer payroll tax sums for themselves, Defendants unjustly enriched themselves at the expense of Plaintiff and Class Members.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§1331, 1337, and 1343 and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

7.      Venue is proper in the Southern District pursuant to 28 U.S.C. §1391.

8.      The IRS will be notified of this Complaint as the Internal Revenue Code requires. Specifically, the Internal Revenue Code provides that "[a]ny person bringing an action under [26

U.S.C. § 7434] Subsection (a) shall provide a copy of the complaint to the IRS upon the filing of such complaint with the court." 26 U.S.C. § 7434(d).

## PARTIES

9.      At all relevant times herein, Plaintiff PEÑA was and is a resident of Queens County, New York.

10.     Corporate Defendant THE HEADLESS WIDOW LLC d/b/a HEADLESS WIDOW is a domestic limited liability company organized under the laws of the State of New York, with a principal place of business and an address for service of process located at 99 1st Avenue, New York, NY 10003.

11.     Individual Defendant owns and operates one (1) restaurant enterprise in New York under the trade name "The Headless Widow" at 99 1st Avenue, New York, NY 10003.

12.     Individual Defendant EDIN CANOVIC is the principal of Corporate Defendant. At all relevant times, Individual Defendant CANOVIC exercises operational control as it relates to all employees including Plaintiff, FLSA Collective Plaintiffs, and the Class. Individual Defendant CANOVIC has exercised the power and authority to (i) fire and hire, (ii) determine rate and method of pay, (iii) set employee work schedules, and (iv) otherwise affect the quality of employment of Plaintiff. At all relevant times, employees could complain to Individual Defendant CANOVIC regarding any of the terms of their employment, and Individual Defendant CANOVIC possessed the authority to effect any changes to the quality or terms of their employment. Individual Defendant CANOVIC ensured that employees effectively served customers and exercised functional control over the business and financial operations of Corporate Defendant. Individual Defendant CANOVIC had the power and authority to supervise and control supervisors of Plaintiff, and could reprimand employees.

13.     At all relevant times, Corporate Defendant was and is an "enterprise engaged in commerce" within the meaning of the FLSA, NYLL, and regulations thereunder.

14.     At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs, and Class Members were directly essential to the business operated by Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

15.     Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt tipped employees, including delivery persons, servers, runners, bussers, and bartenders among others, employed by Defendants on or after the date that is six (6) years before the filing of the Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

16.     At all relevant times, Plaintiff and FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them their proper wages, including: (i) unpaid wages, including overtime, due to an invalid tip credit; (ii) unlawfully retained gratuities due to an invalid tip pooling policy; and (iii) unpaid overtime premiums due to straight time pay. The claims of Plaintiff stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

17.     The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to §16(b) of FLSA, 29 U.S.C. 216(b). FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

18.     Plaintiff brings claims for relief pursuant to Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt tipped employees, including waiters, servers, hosts, runners, bussers, bartenders, barbacks, porters, food preparers, and dishwashers, among others, employed by Defendants on or after the date that is six (6) years before the filing of the Complaint in this case as defined herein (the "Class Period").

19.     All said persons, including Plaintiff, are referred to herein as the "Class" or "Class Members". The Class Members are readily ascertainable. The number and identity of the Class Members are able to be determined from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class Member are also determined from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

20.     The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number is presently based are within the sole control of Defendants. There is no doubt that there are more than forty (40) members of the Class.

21.     Plaintiff's claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief, that would be sought by each member of the Class in separate actions. All the Class Members were subject to the same corporate practices of Defendants of (i) failing to pay wages, including overtime, due to an invalid tip credit; (ii) unlawfully retained gratuities due to an invalid tip pooling policy; (iii) failing to pay proper

overtime premium for hours worked over forty (40) hours per week; (iv) unpaid spread of hours premium; (v) failing to provide wage notices to Class Members, at the date of hiring and annually, per requirements of NYLL; and (vi) failing to provide proper wage statements per NYLL.

22.    More specifically, with regard to Plaintiff and Class Members, Defendants also failed to pay the proper minimum wage and overtime because Defendants were not entitled to claim any tip credit because they failed to meet statutory requirements under the NYLL. Plaintiff and Class Members suffered from Defendants' failure to pay minimum wage and their proper overtime due to Defendants' invalid tip credit allowance because Defendants (i) failed to properly provide tip credit notice at hiring and annually thereafter; (ii) had an improper tip pool where managers and employees who did not serve customers were taking tips; (iii) illegally retain gratuities through their managers and employees that did not serve customers; (iv) failed to provide proper wage statements clearly indicating tip credit allowance for each payment period; and (v) failed to accurately keep track of daily tips earned and maintain records thereof.

23.    Defendants retained and failed to remit all tips earned by tipped employees because Defendants' managers and employees who did not serve customers or who only served customers for an hour would retain a portion of the tips earned for the entire shift.

24.    Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiff and other Class Members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures.

25.    Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and

competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

26.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because of losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

27.     Defendants and other employers throughout the state violate the NYLL. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former

employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

28. There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

    a. Whether Defendants employed Plaintiff and the Class Members within the meaning of NYLL and applicable state laws;

    b. What are and were the policies, practices, programs, procedures, protocols, and plans of Defendants regarding the types of work and labor for which Defendants did not pay Plaintiff and Class Members properly;

    c. At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay Plaintiff and Class Members for their work;

    d. Whether Defendants properly notified Plaintiff and Class Members of their hourly rates;

    e. Whether Defendants properly compensated Plaintiff and Class Members for all hours worked;

    f. Whether Defendants operated their business with a policy of failing to pay wages, including overtime, to Plaintiff and Class Members for all hours worked due to an invalid tip credit;

    g. Whether Defendants operated their business with a policy of failing to pay Plaintiff and Class Members the overtime premium for all hours worked in excess of forty (40) each workweek;

h.  Whether Defendants provided proper tip credit notice at hiring and annually thereafter;

i.  Whether Defendants properly provided notice to all tipped employees that Defendants were taking a tip credit;

j.  Whether Defendants had an improper tip pool that included managers and other employees that did not serve customers;

k.  Whether Defendants illegally retained tips and gratuities of Plaintiff and Class Members;

l.  Whether Defendants accurately tracked the amounts of tips earned each day and maintained records thereof;

m.  Whether Defendants properly paid employees their corresponding spread of hours premiums as required under the NYLL;

n.  Whether Defendants failed to withhold taxes from the wages of Plaintiff and the Class;

o.  Whether Defendants provided Plaintiff and the Class with accurate tax statements for each tax year that they worked;

p.  Whether Defendants provided wage and hour notice to employees, including, among others, the rate of compensation, trade name of employer, pursuant to the requirements of NYLL; and

q.  Whether Defendants provided the information required to be provided on wage statements as required under NYLL.

## **STATEMENT OF FACTS**

29.  In or around March 2023, Plaintiff PEÑA was hired by Defendants to work as a

bartender for Defendants' restaurant and cocktail bar "The Headless Widow", located at 99 1st Avenue, New York, NY 10003. Plaintiff was employed by Defendants until in or around May 2023.

30.    Plaintiff PEÑA was scheduled to work six (6) days per week, Tuesday to Sunday from 2:00 p.m. to closing time, which can be anytime from 1:00 a.m. to 3:00 a.m., for a total of approximately seventy-two (72) hours per week. FLSA Collective Plaintiffs and Class Members were similarly scheduled to work more than forty (40) hours each week.

31.    Throughout his employment, Plaintiff PEÑA was compensated at an hourly rate of ten dollars ($10.00) per hour weekly in check for his regular hours and was paid in cash at the same rate for his overtime hours. FLSA Collective Plaintiffs and Class Members were compensated at similar rates weekly in check for regular hours and in cash for overtime hours.

32.    At all relevant times, Plaintiff PEÑA regularly worked over forty (40) hours per week, but Defendants failed to pay him the proper overtime premium rate of one-and-half times of his regular hourly rate for each hour exceeding forty (40) hours per workweek in violation of the FLSA and the NYLL.

33.    During Plaintiff's employment, Defendants compensated him at rates below the New York State minimum wage due to an invalid tip credit and an improper overtime rate. Similarly, FLSA Collective Plaintiffs and Class Members similarly were paid below the New York State minimum wage due to an invalid tip credit and an improper overtime rate.

34.    With respect to Plaintiff, FLSA Collective Plaintiffs, and Class Members, Defendants were not entitled to claim any tip credit allowance under the FLSA or NYLL because Defendants: (i) failed to properly provide tip credit notice at hiring and annually thereafter; (ii) had an improper tip pool where managers and employees who did not serve customers or who only

served customers for an hour would retain a portion of the tips earned for the entire shift; (iii) illegally retained gratuities through its managers and employees that did not serve customers; and (iv) failed to accurately keep track of daily tips earned and maintain records thereof, in violation of the NYLL.

35.     At all relevant times to this action, Defendants failed to provide Plaintiff with a tip sheet which kept track of how much tips he earned each workday. Although Plaintiff received part of his compensation in tips, there was no tip sheet to verify that he received the correct tip amount. The distribution of the tips was under the complete control of Defendants. Customers were also never informed that Plaintiff would not receive full tips and gratuities to which he was entitled.

36.     Throughout Plaintiff's employment, the tip pool would usually involve bartenders, servers and barbacks. However, Plaintiff would notice that Individual Defendant CANOVIC and his sister, Amanda [LNU], would occasionally bartend for an hour and include themselves in the tip pool for the entire shift. By way of example, when Individual Defendant and Amanda [LNU] were not part of the tip pool, Plaintiff noticed that he and his tipped co-workers earned approximately $150 more in tips per day, compared to when they were included. At all other relevant times, Plaintiff would notice that each person in the tip pool would make about $150 less per day when Individual Defendant put himself and/or his sister in the tip pool. Similarly, FLSA Collective Plaintiffs and Class Members were paid less in actual tips owed to them due to Defendants' improper tip pooling scheme.

37.     Throughout Plaintiff's employment with Defendants, Plaintiff regularly worked shifts exceeding ten (10) hours in duration two days a week. However, Plaintiff never received any "spread of hours" premium for working such shifts, as required under the NYLL. Similarly, Class

Members regularly worked shifts exceeding ten (10) hours in duration and were never paid "spread of hours" premium.

38.    Defendants failed to properly withhold Plaintiff and Class Members wages for tax purposes.

39.    Every week, Plaintiff was compensated with a paycheck accompanied with a paystub with all tax deductions. Separately, Plaintiff received an additional payment in cash, without deductions, in violation of the Internal Revenue Code. Similarly, FLSA Collective Plaintiffs and Class Members were subjected to Defendants' willful filing of fraudulent tax information.

40.    Defendants further failed to provide Plaintiff and Class Members with an accurate W-2 tax statement for each tax year during which Plaintiff worked.

41.    Defendants knowingly and willfully operated their business with a policy of not paying for all hours worked to Plaintiff, FLSA Collective Plaintiffs and Class members in violation of FLSA and NYLL.

42.    Defendants knowingly and willfully operated their business with a policy of paying at the New York State tip credit minimum wage and at an improper overtime rate for hours worked over forty (40) in a workweek. Defendants were not entitled to claim any tip credits from Plaintiff, FLSA Collective Plaintiffs, and Class Members under FLSA or NYLL.

43.    Defendants knowingly and willfully operated their business with a policy of not paying Plaintiff and Class Members their spread of hours premium for hours worked over ten (10) in a shift, in violation of the NYLL.

44.    Defendants knowingly and willfully operated their business with a policy of unlawfully retaining gratuities, pursuant to the NYLL.

45.     Defendants had a legal obligation to file accurate tax statements with the IRS.

46.     At all relevant times, Plaintiff and Class Members never received a wage notice from Defendants. They also did not receive any wage statements from Defendants.

47.     In violation of the Wage Theft Protection Act ("WTPA")—incorporated into NYLL—Defendants knowingly and willfully operated their business with a policy of not providing wage notices to Plaintiff and Class Members at the beginning of their employment with Defendants.

48.     Defendants further violated the WTPA by failing to provide Plaintiff and Class Members with any wage statements.

49.     In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that entails a concrete harm to an interest identified by the New York State legislature. As one Court observed:

> Here, Plaintiffs allege that Defendants failed to furnish them with proper wage notices and statements, as required by NYLL §§ 195(1) and 195(3). These provisions were enacted as part of New York's Wage Theft Prevention Act ("WTPA"), N.Y. Lab. Law § 195, which sought "to expand the rights of employees to seek civil and criminal avenues of remedy for their employers failing to follow labor law appropriately and the specifications therein." N.Y. Spons. Mem., 2010 S.B. 8380. More specifically, the New York State Assembly passed the WTPA to address studies showing that a large number of employees were not being paid the wages owed to them, and that many employers were not adequately informing their employees of their wages and how they are calculated in language the employees could understand. *Id.* The New York State Assembly opined that existing penalties did not adequately deter employers from paying less than the wages owed, and stated that the WTPA would dramatically change this by increasing penalties for violating employees' rights. *Id.*

*Imbarrato v. Banta Mgmt. Servs.*, 2020 U.S. Dist. LEXIS 49740, *21-22 (S.D.N.Y. March 20, 2020)

50.     Here, Defendants' failure goes beyond generating a risk of harm to Plaintiff and Class Members. Defendants' conduct actually harmed Plaintiff and Class Members. Defendants'

failure to provide wage notices and paystubs listing all hours actually worked and rates of pay, including overtime hours and overtime rates, deprived employees of the ability to contest the pay provided by Defendants, allowed Defendants to hide their wrong-doing, and necessitated the current litigation to vindicate Plaintiff's and Class Members' rights. This conduct ensured Defendants' ability to further delay providing proper compensation to low wage earners entitled to protection under federal and state law. Defendants' failure to provide wage notices and wage statements to employees allowed Defendants to hide their responsibility and deprive employees of timely compensation.

51.    Had Defendants provided proper wage statements to Plaintiff and Class Members which accurately listed the total number of hours Plaintiff and Class Members actually worked, as required by law, Defendants would have had to either (a) increase the wages to correspond to the hours actually worked or (b) forthrightly acknowledge, by way of the wage statement, that the employee's wages did *not* correspond to the hours the employee actually worked. Either possibility would have allowed Plaintiff and Class Members to vindicate their rights under the NYLL. The deprivation of these possibilities therefore constitutes an injury.

52.    The failure to provide proper wage notices and wage statements continues to result in delayed payment of all proper wages owed to Plaintiff and Class Members. This delayed payment caused Plaintiff and Class Members to struggle to pay bills and other debts.

53.    Defendants knowingly and willfully operated their business with a policy of not providing proper wage notices and wage statements as required by NYLL.

54.    The direct effect of understating the number of hours an employee worked is to reduce the wages that employees are listed as having earned on their wage statements. The direct effect of this, in turn, is to reduce the employee earnings that the employer later reports to the IRS

through the employee's W-2 form, as such information is derived from the information on employees' wage statements. *See Mills v. Mills*, 2021 Minn. Dist. LEXIS 200, at *5 (Minn. Dist. Ct., Anoka County, Tenth Judicial District May 20, 2021) ("Petitioner's gross annual income, based on her 2020 W-21 and paystub dated 12/24/20, is $130,321.30"); *T.F. v. N.F.*, 820 N.Y.S.2d 846, 846 (Sup. Ct., Suffolk Cty., June 22, 2006) ("In 2005 the plaintiff earned $ 133,086 as reflected on his final year paystub and W-2").[1]

55.    The effect of reporting reduced wages on an employees' W-2 is, in turn, to reduce the amount of social security benefits available to the employee, as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. *See McGauran v. Soc. Sec. Comm'n*, 2001 U.S. Dist. LEXIS 3187, at *7 (N.D. Cal. March 19, 2001) ("Social security benefits are based upon the worker's earnings as reported to the [SSA] . . . [and] the worker's earnings are used to determine insured status for entitlement to retirement and to calculate cash benefit rates." (quoting Social Security Administration, Handbook § 1400 (1997)); *Coward v. Zurich Am. Ins. Co.*, 2011 U.S. Dist. LEXIS 74543, at *3 (N.D. Ill. July 8, 2011) ("Under the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year.'") (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

56.    "In the wake of the Supreme Court's decision in *TransUnion*, courts in this Circuit have held that plaintiffs lack standing to bring wage notice and statement claims under the NYLL

---

[1] It is true that the wages reported on W-2 forms are not always precisely identical to those listed on an employees' last paystub for the year. One reason for is, as the IRS explains, that "W-2 wages include: (i) the total amount of wages as defined in section 3401(a); (ii) the total amount of elective deferrals (within the meaning of section 402(g)(3)); (iii) the compensation deferred under section 457; and (iv) the amount of designated Roth contributions (as defined in section 402A)." https://www.irs.gov/pub/irs-drop/rp-19-11.pdf. However, the possibility, that wages listed on a W-2 might be affected by such considerations does not change the fact that the base wages on the W-2 are derived from paystubs. The paystub processing service *realcheckstubs* explains:  "A pay stub contains crucial information that assists in calculating W2 wages. Paystub provides gross wages, deductions, taxes withheld, and other income-related data. Individuals gather the necessary figures required for accurate W2 calculation by referring to the pay stub." https://www.realcheckstubs.com/blog/paystubs/6-steps-how-to-calculate-w-2-wages-from-paystub.

absent any concrete, downstream consequences of the recordkeeping violation." *Chen v. Lilis 200 W. 57th Corp.*, 2023 U.S. Dist. LEXIS 38163, at *18 (S.D.N.Y. Mar. 7, 2023). "On the other hand, 'allegations' that go 'beyond asserting a bare statutory violation and sufficiently allege concrete harm' resulting from 'the underpayment of wages' pass muster because 'monetary injury is a concrete harm sufficient for purposes of Article III standing.'" *Thompson v. Elev8 Ctr. N.Y.*, *LLC*, 2023 U.S. Dist. LEXIS 122504, at *21 (S.D.N.Y. July 17, 2023) (quoting *Mateer v. Peloton Interactive, Inc.*, 2022 U.S. Dist. LEXIS 125017, at *4 (S.D.N.Y. July 14, 2022)).

57.     Here, it is clear that Defendants' failure to provide Plaintiff and Class Members with accurate wage statements entailed "concrete, downstream consequences" involving monetary injury. Had the number of hours been accurately reported for a given pay period, Defendants' automatic payroll system would have correspondingly increased the wages due for that period, which in turn would have been reflected in the W-2s that Defendants submitted to the IRS on behalf of Plaintiff and Class Members. That, in turn, would have increased Plaintiff's and Class Members' entitlement to social security benefits. Because the inaccuracy prevented this outcome, it constitutes an injury sufficient to provide Plaintiff with Article III standing.

58.     Courts agree that the misreporting of wages constitutes a concrete injury cognizable under Article III:

> The Seventh Circuit in *Calderon* squarely addressed FICA standing. The plaintiffs in *Calderon* were former employees alleging the employer failed to pay their FICA taxes. 999 F.2d at 1105-06. The Seventh Circuit found that the plaintiffs lacked standing to compel the employer to pay their FICA taxes because "[b]enefits do not. . . depend on whether the employer actually paid the taxes." *Id*. at 1106. Plaintiffs could, however, enforce FICA's reporting requirement because it is the reporting of income that triggers benefits, and losing benefits is an injury under *Lujan*. *Id*. Whether the employer in *Calderon* made FICA payments on the plaintiffs' behalf had no bearing on the plaintiffs' entitlement to benefits. *Id*. "[T]he plaintiff's real interest lies in ensuring that the [employer] make the proper reports of their income." *Id*.

*Coward*, 2011 U.S. Dist. LEXIS 74543, at \*3-4.

59.     The case at bar is somewhat different from *Coward* inasmuch as Defendants actually underpaid Plaintiff and other employees rather than merely misreporting their income. But this distinction has no bearing on the question of Article III standing, since it is still the case that "it is the reporting of income that triggers benefits, and losing benefits is an injury." *Id*. Plaintiff and Class members lost benefits by virtue of how Defendants reported their income, and how Defendants reported employees' income was the direct outcome of the inaccuracies in employees' wage statements. That is why "Plaintiffs have standing to enforce the statutory reporting requirements" imposed by the WTPA. *Calderon v. Witvoet*, 999 F.2d 1101, 1106 (7th Cir. 1993).

60.     Whether or not any Class Members are presently eligible for social security benefits is legally immaterial. *See id*. ("Although only citizens and aliens residing in the United States may receive benefits, 42 U.S.C. § 402(t), plaintiffs may eventually fulfill this requirement and therefore are entitled to keep their Social Security accounts accurate.").

61.     The *Calderon* court stressed that an employee's interest in ensuring that an employer properly report the employee's income is amplified by the difficulty of persuading the government to correct errors:

> The practical difficulty is that eligibility for Social Security benefits presumptively depends on reports that employers send to the government. A worker who seeks credit for unreported income bears the burden of proof, 42 U.S.C. § 405(c)(3), (4), which will be hard to carry if the employer has not furnished the customary documentation. The government believes employers who report earnings, because these reports are costly to make--they entail paying a substantial tax. The government tends not to believe undocumented claims by employees, because these claims are essentially costless yet could establish entitlement to large pensions or disability benefits.
>
> All of this means that the plaintiffs' real interest lies in ensuring that the Witvoets make the proper reports of their income.

*Id.*

62.     Here, the problem is not merely challenging but insurmountable. Plaintiff and Class members cannot even attempt to have their earnings report corrected because Defendants *did* report what they actually paid Plaintiff and Class Members. The problem, rather, is that Plaintiff and Class Members were underpaid. Yet the ultimate effect is the same—reduced social security eligibility. Because "[u]nder the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year,'" Plaintiff was irreversibly injured with respect to his social security benefits as soon as Defendants sent his W-2 to the IRS. *Coward*, 2011 U.S. Dist. LEXIS 74543, at *3 (N.D. Ill. July 8, 2011) (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

63.     Defendants knowingly and willfully operated their business with a policy of failing to provide Plaintiff and Class Members with proper wage statements as required under NYLL.

64.     Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs, and Class Members in this litigation, and has agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

## COUNT I

## VIOLATION OF FAIR LABOR STANDARDS ACT

65.     Plaintiff repeats each and every previous allegation in this Class and Collective Action Complaint as if fully set forth herein.

66.     At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

67.    At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

68.    At all relevant times, Corporate Defendants had gross annual revenues in excess of $500,000.

69.    At all relevant times, Defendants had a policy and practice that failed to pay proper minimum wages, including overtime, due to invalid tip credit to Plaintiff and FLSA Collective Plaintiffs.

70.    At all relevant times, Defendants had a policy and practice of failing to pay Plaintiff and FLSA Collective Plaintiffs their proper overtime wages for their hours worked over forty (40) hours a week, due to improper straight time pay.

71.    At all relevant times, Defendants had a policy and practice of unlawfully retaining Plaintiff's and a subclass of FLSA Collective Plaintiffs' gratuities.

72.    Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case, and if necessary, will seek leave of Court to amend this Complaint to set forth the precise amount due.

73.    Defendants knew of and/or showed a willful disregard for the provisions of FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs their proper wages, including their proper overtime premium, when Defendants knew or should have known such was due.

74.    Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under FLSA.

75.     As a direct and proximate result of Defendants' willful disregard of FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to FLSA.

76.     Due to the intentional, willful, and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid overtime premiums, unpaid wages, including overtime, due to an invalid tip credit, unlawful tip retentions, plus an equal amount as liquidated damages.

77.     Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorney's fees and costs pursuant to 29 U.S.C. § 216(b).

## COUNT II

## <u>VIOLATION OF NEW YORK LABOR LAW</u>

78.     Plaintiff repeats each and every previous allegation in this Class and Collective Action Complaint as if fully set forth herein.

79.     At all relevant times, Plaintiff and Class Members were employed by Defendants within the meaning of NYLL, §§ 2 and 651.

80.     Defendants willfully violated Plaintiff's and Class Members' rights by failing to pay them the prevailing New York State minimum wages.

81.     Defendants knowingly and willfully failed to pay Plaintiff and Class Members their spread of hours premiums for shifts lasting longer than ten (10) hours in duration, in violation of the NYLL.

82.     Defendants failed to properly notify Plaintiff and Class Members of their hourly pay rates and overtime rates, in direct violation of the New York Labor Law.

83.     At all relevant times, Defendants knowingly and willfully operated their business with a policy of not paying the proper overtime premium thereof for all hours in excess of forty

(40) worked per week to Plaintiff and Class Members, due to improper straight rate compensation, in direct violation of NYLL.

84.    Defendants willfully violated Plaintiff's and Class Members' rights by illegally retaining gratuities.

85.    At all relevant times, Defendants knowingly and willfully operated their business with a policy of failing to keep track of daily tips earned and maintain records thereof, in direct violation of NYLL.

86.    At all relevant times, Defendants knowingly and willfully operated their business with a policy of not providing Plaintiff and Class members proper tip credit notice, at date of hiring and annually thereafter, in direct violation of NYLL.

87.    Defendants knowingly and willfully operated their business with a policy of not providing Plaintiff and Class Members wage notice, at date of hiring and annually thereafter, as required under NYLL.

88.    Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements, as required under NYLL.

89.    Due to Defendants' NYLL violations, Plaintiff and Class Members are entitled to recover from Defendants unpaid wages, including overtime, due to an invalid tip credit, unpaid overtime premiums, unlawful tip retentions, unpaid spread of hours premium, reasonable attorney's fees, liquidated damages, statutory penalties, and costs and disbursements of the action, pursuant to the NYLL.

## COUNT III

## CIVIL DAMAGES FOR FRAUDULENT FILING OF INFORMATION RETURNS

## UNDER 26 U.S.C. § 7434(a)

### (brought individually and on behalf of the Class)

90.     Plaintiff realleges and incororates all the foregoing paragraphs of this Class and Collective Action Complaint as if fully set forth herein.

91.     Under the Internal Revenue Code, "[i]f any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such person may bring a civil action for damages against the person so filing such return." 26 U.S.C. § 7434(a).

92.     By failing to provide Plaintiff and Class Members with accurate IRS Forms W-2 for all of the tax years during which they were employed by Defendants and failing to properly record, account for, and report to the IRS all monies paid to Plaintiff and the Class as wages, Defendants filed fraudulent information returns with the IRS, in violation of 26 U.S.C. § 7434.

93.     Defendants knew they had a legal duty not to misrepresent to the IRS the amount of money they were paying employees. Defendants' actions were willful violations of, or showed reckless disregard for, the provisions of the Internal Revenue Code.

94.     Pursuant to 26 U.S.C. § 7434(b)(3), Defendants are also liable to Plaintiffs, FLSA Collective Plaintiffs, and the Class for reasonable attorney's fees.

## COUNT IV

## BREACH OF CONTRACT

### (brought individually and on behalf of the Class)

95.     Plaintiff realleges and incorporates all the foregoing paragraphs of this Class and Collective Action Complaint as if fully set forth herein and further alleges as follows.

96.    "In New York, all contracts imply a covenant of good faith and fair dealing in the course of performance … This covenant embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract … [T]he duties of good faith and fair dealing … encompass any promises which a reasonable person in the position of the promisee would be justified in understanding were included [in the contract]." *511 W. 232nd Owners Corp. v. Jennifer Realty Co.*, 98 N.Y.2d 144, 153 (2002).

97.    When Plaintiff and Class Members accepted offers of employment form Defendants, the parties entered a contract, and the covenant of good faith and fair dealing implicit therein required Defendants to pay Plaintiff and Class Members in accordance with all applicable laws. This involved, *inter alia*, a duty by abide by the Internal Revenue Code and pay all required FICA taxes.

98.    Defendants breached this duty when they decided to pay Plaintiff and Class Members partly in cash and not file proper W-2.  As a result, Plaintiff and Class Members lost part of the benefit of the bargain for which they contracted, suffering a loss in the amount of the FICA taxes that Defendants should have paid on their behalf but did not.

## COUNT V

## <u>UNJUST ENRICHMENT</u>

### (brought individually and on behalf of the Class)

99.    Plaintiff realleges and incorporates all the foregoing paragraphs of this Class and Collective Action Complaint as if fully set forth herein and further alleges as follows.

100.    To state a claim for unjust enrichment, a plaintiff must allege that: "(1) the [defendant] was enriched, (2) at [plaintiff's] expense, and (3) that it is against equity and good

conscience to permit the [defendant] to retain what is sought to be recovered." *Georgia Malone & Co., Inc. v Rieder*, 19 NY3d 511, 516 (2012) (internal quotations omitted).

101.    Defendants were unjustly enriched when they kept for themselves money that should have been paid to the Internal Revenue Service as Defendants' employer FICA contribution. Such came at the expense of Plaintiff and Class Members because they will either (1) be liable to the IRS for the employer's share or (2) upon retirement suffer from diminished Social Security and Medicare benefits because they did not pay enough into the system.

102.    Accordingly, all sums that Defendants should have paid to the IRS should be disgorged from Defendants and transferred to Plaintiff and Class Members.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself, FLSA Collective Plaintiffs, and Class Members, respectfully requests that this Court grant the following relief:

a.    A declaratory judgment that the practices complained of herein are unlawful under FLSA and NYLL;

b.    An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c.    An award of unpaid overtime premiums, due to improper straight rate compensation, due under the FLSA and the NYLL;

d.    An award of unpaid wages, including overtime, due to an invalid tip credit under the NYLL;

e.   An award equal to the amount of the improperly retained tips and gratuities withheld by Defendants;

f.   An award of unpaid spread of hours premiums, due under the NYLL;

g.   An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay proper wages pursuant to 29 U.S.C. § 216;

h.   An award of statutory penalties as a result of Defendants' failure to comply with wage notice and wage statement requirements under NYLL;

i.   An award of statutory penalties, prejudgment, and post judgment interest, costs, and expenses of this action together with reasonable attorney's fees and expert fees and statutory penalties;

j.   An award of five thousand dollars in statutory damages to Plaintiff and each Class Member under 26 U.S.C. § 7434;

k.   Contractual damages for Defendants' failure to keep their promise to abide by the Internal Revenue Code and fund Plaintiff's and Class Members' retirement through FICA contributions;

l.   Designation of Plaintiff as Representative of FLSA Collective Plaintiffs;

m.   Designation of this action as a class action pursuant to F.R.C.P. 23;

n.   Designation of Plaintiff as Representatives of the Class; and

o.   Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Date: June 6, 2025
        New York, New York

Respectfully submitted,

By:   /s/ *CK Lee*
        C.K. Lee, Esq.
        **LEE LITIGATION GROUP, PLLC**
        C.K. Lee (CL 4086)
        Anne Seelig (AS 3976)
        148 W. 24th Street, 8th Floor
        New York, NY 10011
        Tel.: 212-465-1180
        Fax: 212-465-1181
        *Attorneys for Plaintiff,*
        *FLSA Collective Plaintiffs, and the Class*